GARY M. RESTAINO
United States Attorney
District of Arizona
Wallace H. Kleindienst
Mary Sue Feldmeier
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
wallace.kleindienst@usdoj.gov
mary.sue.feldmeier@usdoj.gov
Attorneys for Plaintiff

FILED

2021 DEC -8  PM 3: 04

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

CR21-03136 TUC-JCH(EJM)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

            Plaintiff,

      vs.

Koreasa M. Williams,

            Defendant.

INDICTMENT

Violations:
18 U.S.C. § 1343
(Wire Fraud)
Counts 1-6

VICTIM CASE

**THE GRAND JURY CHARGES:**

**Introductory Allegations**

At all times material to the Indictment:

1.      The defendant, Koreasa M. Williams resides in Tucson, Arizona.

2.      Defendant was listed with the Arizona Department of Insurance as the registered agent and owner of GLAM Insurance Services LLC (GLAM), which is located in Tucson, Arizona.  GLAM does business as Williams and Associates.  The defendant held a valid Arizona Health and Life Insurance Agent's license.  The defendant was in the business of selling life, accident and health insurance policies and insurance annuity policies from various insurance companies.

3.      J.L.F. is retired and resides in Green Valley, Arizona.  J.L.F. had substantial funds invested in several life insurance policies and IRAs.  On or about September 1, 2018,

the defendant met J.L.F. in her capacity as an insurance agent. Thereafter, the defendant fraudulently ingratiated herself with J.L.F., developed a relationship with him, and caused him to trust the defendant's financial advice and counsel.

4.     As a result of that trust, in October 2018, the defendant convinced J.L.F. to unnecessarily transfer several of his investments into several annuities placed by the defendant which resulted in substantial commissions to her but to the financial detriment of J.L.F.

5.     In November 2018, the defendant convinced J.L.F. to cancel several life insurance policies in his name to place the proceeds, which amounted to approximately $1,000,000, in another new annuity. Those policies were cancelled and J.L.F. received the proceeds in December 2018.

## Scheme and Artifice to Defraud

6.     Beginning in or about November 2018 and ending in or about December 2019, the defendant defrauded J.L.F. of more than $1,340,000 for her own use and benefit. The defendant, Koreasa Williams, with the intent to defraud, knowingly and willfully participated in, devised and intended to devise a scheme and artifice to defraud and a scheme to obtain victim J.L.F.'s money by materially false and fraudulent pretenses, representations, promises and the intentional concealment of material facts.

7.     It was part of the scheme and artifice to defraud J.L.F. that the defendant needed money to "pay-off" the victims of an earlier scheme to defraud, which involved nine other annuity clients of her insurance business, to attempt to stop a criminal investigation and an Arizona Department of Insurance investigation against her.  In that earlier fraud scheme, which took place between 2011 and 2018, the defendant submitted fraudulently prepared annuity surrender forms to the clients' annuity companies, in her clients' names without her clients' knowledge or consent, causing the partial or full surrender of the annuities, and directing $1,064,522 in proceeds to be deposited into the USAA bank accounts owned by the defendant.

8.   That earlier fraud scheme began to unravel in mid-November 2018, when one of victims confronted the defendant about the fraudulent annuity surrenders. Thereafter, the Arizona Department of Insurance and Federal Bureau Investigation began investigating the defendant.

9.   On November 30, 2018, the defendant retained Law Firm A located in Tucson, Arizona.  At some point in time, Law Firm A was advised that the defendant had borrowed money from the victims in the earlier fraud scheme, had given the victims promissory notes for those loans, and wanted to "pay off" the notes.  The defendant represented to Law Firm A that she had a "rich Uncle in Green Valley" who would loan her the money to pay off the debts.  It was decided, with the consent and approval of the defendant, that "repayment" of those alleged loans would be handled by Law Firm A, and that the money the defendant provided would be deposited into a bank account belonging to Law Firm A, and then checks would be written to the victims from Law Firm A's account in amounts to be determined by the defendant.

10.   The defendant sought to pay back the money she defrauded from the victims to stop the investigations into her earlier fraud scheme. The defendant, however, did not have the money available to do so, but she knew that J.L.F. did as a result of the aforesaid cancellation of the life insurance policies in December 2018.

11.   On or about January 10, 2019, the defendant convinced J.L.F. to write a check for $1,000,000 on his USAA Federal Savings Bank account, account number XXXX1460, made payable to two names (hereinafter A-B), which unbeknownst to J.L.F. were the two last names of partners with Law Firm A, and dated January 10, 2019. J.L.F., believing he was investing in an annuity with the defendant's "annuity firm," placed the notation "investment" in the memo line of the check.  The defendant falsely stated to J.L.F. that "A-B" worked for GLAM, her annuity company, and that the $1,000,000 was for the purchase of an annuity for J.L.F. with GLAM.  GLAM, however, was not an annuity company. At no time did the defendant advise J.L.F. that "A-B" was a law firm or that "A-B" represented her in criminal and administrative investigations.

1     12.    The defendant provided Law Firm A with J.L.F.'s $1,000,000, which Law

2    Firm A, with the defendant's knowledge and consent, deposited into its IOLTA (Interest

3    On Lawyers Trust Account) bank account with JPMorgan Chase in Tucson, Arizona, on

4    January 10, 2019. It was the defendant's intent and purpose in providing that check to Law

5    Firm A to use the funds from J.L.F.'s $1,000,000 check to "pay back" the victims from her

6    first fraud scheme, contrary to her representations to J.L.F. that the funds would be invested

7    on his behalf and for his use.

8     13.    Thereafter, the defendant instructed Law Firm A to write checks on the

9    IOLTA bank account to victims in the defendant's earlier annuity withdrawal scheme.

10    Between January 22, 2019 and February 20, 2019, the defendant caused Law Firm A to

11    use $863,935.87 of J.L.F.'s funds to issue nine (9) checks to M.K., S.K., G.B., M.N., M.L.,

12    and R.C., all victims of the defendant's earlier annuity scheme. The defendant never

13    purchased an annuity for J.L.F. with those funds.

14     14.    It was further part of the scheme and artifice to defraud J.L.F. that the

15    defendant needed additional money to settle a civil lawsuit filed against her, her husband,

16    and GLAM in 2016, in Pima County Superior Court in Tucson, Arizona entitled *Jayne*

17    *Shaffer* v. *Koreasa M. Williams, et al*, Case No C2016-3791, (the *Shaffer* lawsuit). That

18    case was scheduled to begin trial March 26, 2019.

19     15.    The defendant and her husband had engaged Law Firm A to assist in

20    procuring another law firm (Law Firm B) to negotiate a $150,000 settlement of the *Shaffer*

21    lawsuit in lieu of trial. However, the defendant had an insufficient balance in Law Firm

22    A's IOLTA account remaining from the $1,000,000 of J.L.F.'s funds to cover the $150,000

23    settlement. By March 21, 2019, after paying back victims of the earlier fraud scheme and

24    paying various attorney's fees, approximately $84,712.63 of J.L.F.'s funds were left in the

25    IOLTA account to cover the *Shaffer* settlement prior to the lawsuit's March 26, 2019 trial

26    date.

27     16.    In February or March 2019, the defendant and her husband visited J.L.F. at

28    his residence in Green Valley and asked him for a $400,000 personal loan because of a

"big mistake." J.L.F. declined to make the defendants the loan. Thereafter, in March 2019, the defendant fraudulently convinced J.L.F. to make a $100,000 "loan" to GLAM, her insurance company, falsely making him believe that he was investing in the company in which he believed he had purchased the $1,000,000 annuity on January 10, 2019.

17.     On or about March 21, 2019, J.L.F. gave the defendant a check for $100,000, drawn on his USAA bank account, account number XXXX1460, dated March 21, 2019, made payable to "A B," which unbeknownst to J.L.F. were the last names of partners with Law Firm A.  The defendant instructed J.L.F. to write "loan" on the memo line and J.L.F. complied, believing he was "investing" in the company that held his $1,000,000 annuity. At no time did the defendant advise J.L.F. that she would use his funds to settle a civil lawsuit or pay her attorney's fees.

18.     On or about March 22, 2019, the defendant gave J.L.F.'s $100,000 check to Law Firm A, which Law Firm A, with the defendant's knowledge and consent, deposited in Law Firm A's IOLTA bank account with JPMorgan Chase Bank to the credit of the defendant. None of the $100,000 that J.L.F. gave to defendant Koreasa M. Williams was used to invest in GLAM or any other annuity company.

19.     On or about March 25, 2019, Law Firm A, at the direction of defendant, purchased a cashier's check in the amount of $150,000 using J.L.F.'s funds deposited into the IOLTA account, to settle the *Shaffer* lawsuit on behalf of the defendant, her husband, and her business.

20.     It was further a part of the scheme and artifice to defraud J.L.F that defendant needed additional money to continue to pay Law Firm A's legal fees to represent her as well as to "pay-off" another two victims in the annuity withdrawal scheme.

21.     Sometime in June 2019, the defendant approached J.L.F. and obtained a $120,000 check from him.  While J.L.F. does not recall exactly what the defendant represented to him the money would be used for, J.L.F. is certain that he did not give her the funds for her own personal use and benefit. As a result of defendant's fraudulent representations, J.L.F. provided the defendant a check for $120,000, drawn on his Bank of

America Account, account number XXXX9689, dated June 20, 2019, made payable to "A B," which unbeknownst to J.L.F. were the last names of partners with Law Firm A. That check was deposited into the IOLTA account of Law Firm A on or about June 25, 2019, with the knowledge and consent of, and to the credit of the defendant.

22.     On or about June 25, 2019, Law Firm A issued two checks each in the amount of $35,000 to two victims in the annuity withdrawal scheme, for a total of $70,000, from J.L.F.'s funds on deposit in the IOLTA account. On or about July 5, 2019, Law Firm A transferred $50,000 from J.L.F.'s funds on deposit in the IOLTA account to Law Firm A as legal fees.

23.     It was further a part of the scheme and artifice to defraud J.L.F. that the defendant obtained $124,252 from J.L.F. through her fraudulent use of *In Its Time*, an Arizona Domestic Nonprofit Corporation.

24.     On or about July 8, 2019, the defendant's husband incorporated *In Its Time* under the laws of the State of Arizona. The corporate documents reflect that the character of the business of *In Its Time* was a "ministry." At all times relevant hereto, the defendant's husband was the sole director and statutory agent of *In Its Time*.

25.     On or about August 23, 2019, the defendant's husband opened a business checking account in the name of *In Its Time* with JPMorgan Chase Bank in Tucson, Arizona, account number XXXX8698. At all times relevant hereto, defendant's husband was the sole signatory on that bank account and the defendant accessed the account by using the debit card issued in her husband's name.

26.     Sometime between July 2019 and September 2019, the defendant suggested to J.L.F. that he form a charitable foundation with a "religious" name to avoid scrutiny by the I.R.S., which would be controlled by the defendant, to provide for the support and maintenance of J.L.F.'s "special needs" daughter. J.L.F. would fund the charitable foundation with money from his existing charitable foundation known as the F.F.F. It was decided that the foundation would be known as The Sacred Juniper Society.

27.     The defendant fraudulently persuaded J.L.F. to transfer some money from the F.F.F. to *In Its Time*, where the money could be "held" until The Sacred Juniper Society was created by the defendant. The defendant falsely and fraudulently assured J.L.F. that the money would be "held" in *In Its Time* for the benefit of J.L.F.'s daughter and that J.L.F. could direct the defendant to receive and use the money for the benefit of J.L.F.'s daughter until such time as The Sacred Juniper Society was formed. The defendant told J.L.F. that *In Its Time* was a foundation, similar to F.F.F.'s existing foundation, controlled by the defendant's husband. The defendant did not tell J.L.F. that *In Its Time* was formed as a "ministry" or that the money that J.L.F. transferred into *In Its Time* would be used for the benefit of the defendant and her family.

28.     The defendant caused the formation of The Sacred Juniper Society under the laws of the State of Arizona on or about November 12, 2019, approximately two months after she began receiving funds from J.L.F. to "hold" for the new foundation. The defendant never opened a bank account in the name of Sacred Juniper Society.

29.     As a result of the defendant's false and fraudulent representations, J.L.F. gave her four checks drawn on the F.F.F.'s bank account with Merrill Lynch Bank of America, account number XXXXX7434, made payable to *In Its Time* dated September 4, 2019, in the amount of $23,652; dated September 4, 2019, in the amount of $600; dated October 2, 2019, in the amount of $50,000; and dated November 19, 2019, in the amount of $50,000; for a total of $124,252. Those checks were deposited in the *In Its Time*'s bank account with JPMorgan Chase Bank, account number XXXXX8698.

30.     $5600 of the funds were used for the benefit of J.L.F.'s special needs daughter as intended. However, the remaining $118,652 was never used for the benefit of J.L.F.'s daughter nor transferred to The Sacred Juniper Society as promised to J.L.F. by the defendant. Rather, between September 18, 2019, and January 28, 2020, the defendant and her husband fraudulently converted these funds to their own use and benefit including checks to other religious entities for the credit of the defendant and/or her husband, ATM cash withdrawals, over the counter cash withdrawals, supermarket expenses, convenience

store expenses, fast food restaurants, Infiniti car payment, cable fees, and movie theater charges.

## **Wire Fraud**

The factual allegations in Paragraphs One (1) through Thirty (30) above are incorporated by reference as if more fully set forth in Counts 1- 6 charged herein.

## **Count 1**

On or about January 10, 2019, within the District of Arizona, and elsewhere, the defendant, KOREASA M. WILLIAMS, for the purpose of and as an essential part of executing the scheme to defraud described above, transmitted and knowingly caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds, that is, electronic transmissions caused by the deposit of a $1,000,000 personal check from J.L.F.'s USAA Federal Savings Bank, account number XXXX1460, into Law Firm A's J.P. Morgan Chase IOLTA account XXXX5008, for the purpose of converting the funds from this check to the defendant's own use and benefit without the knowledge or consent of J.L.F.

All in violation of Title 18, United States Code, Section 1343.

## **Count 2**

On or about March 22, 2019, within the District of Arizona, and elsewhere, the defendant, KOREASA M. WILLIAMS, for the purpose of and as an essential part of executing the scheme to defraud described above, transmitted and knowingly caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds, that is, electronic transmissions caused by the deposit of a $100,000 personal check from J.L.F.'s USAA Federal Savings Bank, account number XXXX1460, into Law Firm A's J.P. Morgan Chase IOLTA account XXXX5008, for the purpose of converting the funds from this check to the defendant's own use and benefit without the knowledge or consent of J.L.F.

All in violation of Title 18, United States Code, Section 1343.

## Count 3

On or about June 25, 2019, within the District of Arizona, and elsewhere, the defendant, KOREASA M. WILLIAMS, for the purpose of and as an essential part of executing the scheme to defraud described above, transmitted and knowingly caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds, that is, electronic transmissions caused by the deposit of a $120,000 personal check from J.L.F.'s Bank of America, account number XXXX9689, into Law Firm A's J.P. Morgan Chase IOLTA account XXXX5008, for the purpose of converting the funds from this check to the defendant's own use and benefit without the knowledge or consent of J.L.F.

All in violation of Title 18, United States Code, Section 1343.

## Count 4

On or about September 5, 2019, within the District of Arizona, and elsewhere, the defendant, KOREASA M. WILLIAMS, for the purpose of and as an essential part of executing the scheme to defraud described above, transmitted and knowingly caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds, that is, electronic transmissions caused by the deposit of a $23,652 check, drawn on F.F.F.'s Merrill Lynch Bank of America, account number XXXX7434, into In Its Time's J.P. Morgan Chase checking account XXXX8698, for the purpose of converting the funds from this check to the defendant's own use and benefit without the knowledge or consent of J.L.F.

All in violation of Title 18, United States Code, Section 1343.

## Count 5

On or about October 3, 2019, within the District of Arizona, and elsewhere, the defendant, KOREASA M. WILLIAMS, for the purpose of and as an essential part of executing the scheme to defraud described above, transmitted and knowingly caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds, that is, electronic transmissions caused by the deposit of a $50,000 check, drawn

1   on F.F.F.'s Merrill Lynch Bank of America, account number XXXX7434, into In Its

2   Time's J.P. Morgan Chase checking account XXXX8698, for the purpose of converting

3   the funds from this check to the defendant's own use and benefit without the knowledge or

4   consent of J.L.F.

5          All in violation of Title 18, United States Code, Section 1343.

6                     **<u>Count 6</u>**

7          On or about November 19, 2019, within the District of Arizona, and elsewhere, the

8   defendant, KOREASA M. WILLIAMS, for the purpose of and as an essential part of

9   executing the scheme to defraud described above, transmitted and knowingly caused to be

10  transmitted by means of wire communication in interstate commerce writings, signals, and

11  sounds, that is, electronic transmissions caused by the deposit of a $50,000 check, drawn

12  on F.F.F.'s Merrill Lynch Bank of America, account number XXXX7434, into In Its

13  Time's J.P. Morgan Chase checking account XXXX8698, for the purpose of converting

14  the funds from this check to the defendant's own use and benefit without the knowledge or

15  consent of J.L.F.

16         All in violation of Title 18, United States Code, Section 1343.

18                    A TRUE BILL

19                    */s/*

20

21                    FOREPERSON OF THE GRAND JURY
                         Dated: December 8, 2021

23  GARY M. RESTAINO
    United States Attorney

24  District of Arizona

REDACTED FOR
PUBLIC DISCLOSURE

25  */s/*

26  WALLACE H. KLEINDIENST
    MARY SUE FELDMEIER

27  Assistant U.S. Attorneys

28

*United States of America v. Koreasa M. Williams*
*Indictment Page 10 of 10*